**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION, CINCINNATI**

| | |
|---|---|
| ANGELA SPURLOCK, ) | |
| ) | Case No. 20-cv-01038 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Carrols LLC, ) | |
| d/b/a Burger King Corporation ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT CARROLS LLC'S COMBINED RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY ACTION PENDING ARBITRATION

Plaintiff Angela Spurlock ("Spurlock" or "Plaintiff") agreed in writing to submit all disputes regarding, or arising out of, her employment with Defendant Carrols LLC ("Carrols") to individual arbitration. Spurlock's employment claims are subject to that Arbitration Agreement, with the allegations of the Second Amended Complaint bolstering Carrols' position. Carrols thus moves this Court pursuant to Sections 2 and 3 of the Federal Arbitration Act ("FAA") and Federal Rule of Civil Procedure 12(b)(1) to compel this matter to proceed through binding arbitration and to dismiss Spurlock's Second Amended Complaint with prejudice, or, alternatively to stay this matter pending arbitration.

57227355;2

Dated: April 5, 2021

Respectfully submitted,

CARROLS LLC

*s/ Jeffrey J. Mayer*

Jeffrey J. Mayer (Bar No. 69327)
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
Telephone: 312.634.5700
Facsimile: 312.424.1900
Email: jeffrey.mayer@akerman.com

Stephen D. Jones  (0018066) (Trial Attorney)
Jeremy S. Young  (0082179)
Roetzel & Andress, LPA
41 S. High Street, 21st floor
Columbus, OH 43215
Telephone: 614.463.9770
Facsimile: 614.463.9792
E-mail:  sjones@ralaw.com
            jyoung@ralaw.com

*Counsel for Defendant, Carrols LLC*

## MEMORANDUM IN SUPPORT

### INTRODUCTION

Spurlock signed an Arbitration Agreement expressly covering any claims relating or referring in any manner to "disputes, claims, or controversies for monetary or equitable relief arising out of or relating to [her] employment. . ." (*See* Arb. Agmt., Ex. 1 to Affidavit of Gerald DiGenova, filed as Ex. A). The Arbitration Agreement designates JAMS, a national arbitration association, as the contracted-for tribunal. JAMS has a specific set of employment rules preserving all of Spurlock's remedies, and guaranteeing a neutral, procedurally fair forum. (*See* "JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness", DiGenova Aff., Ex. 5)

2

(requiring adherence to the procedural standards or JAMS will refuse to proceed). Carrols bears all costs of the arbitration aside from an initial filing fee. Carrols even reimburses half of that fee provided that proof of payment is delivered to it within two weeks after filing an arbitration. (*See* Ex. 1 at p. 2). For the avoidance of doubt, Carrols will stipulate that the JAMS rules do not require Spurlock to pay any further fees. Spurlock's grievances will be properly and fairly addressed in arbitration in a convenient locale at minimal cost to her.

Accordingly, Carrols requests that this Court honor and enforce the Arbitration Agreement as required under the FAA, 9 U.S.C. §§ 1-16, which expresses the clear congressional intent that arbitration provisions are valid, irrevocable and enforceable and can be required as a condition of employment. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018) (upholding employees' arbitration agreements); *Tillman v. Macy's Inc.*, 735 F.3d 453 (6th Cir. 2013) (enforcing unsigned arbitration clause and compelling arbitration of employee's Title VII claim); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967 (6th Cir. 2007) (finding employee agreed to arbitrate by continuing employment after receiving notice of arbitration policy); *Cosgrove v. Shearson Lehman Bros.*, 105 F.3d 659 (6th Cir. 1997) (compelling employee's Title VII claims to arbitration).

## RELEVANT FACTS

### A. Spurlock's Allegations and Procedural History

Spurlock filed her complaint on November 27, 2020. On December 23, 2020, Spurlock filed an amended complaint, substituting Carrols for Burger King Corporation as the defendant. On March 11, 2021, Spurlock sought leave to file the Second Amended Complaint. Spurlock claims that she worked for Carrols as a general manager at the Burger King restaurant located at 9427 Colerain Avenue, Cincinnati, Ohio, 45251. (Second Am. Compl. ¶¶ 5, 7). Spurlock claims that the other employees at the restaurant engaged in "severe and dangerous behavior" towards

her, "including, but not limited to, berating and humiliating Plaintiff in front of others and in private." *Id*. at ¶ 10. She further alleges that the employees knew or should have known that she had clinical anxiety and depression. *Id*. Spurlock claims that her district manager was aware of her health conditions. *Id*. at ¶ 26. Spurlock alleges that he nevertheless publicly scolded her, humiliated her, and lost his temper with her, all of which occurred at work. *Id*. at ¶ 27. According to the Second Amended Complaint, Spurlock complained to another district manager and to the Human Resources manager and requested a transfer to another restaurant. *Id*. at ¶¶ 31-32. Spurlock alleges that her requests were ignored and she was forced to continue working with her district manager. *Id*. Spurlock claims that the actions of her district manager caused her to attempt suicide by gunshot. *Id*. at ¶¶11, 12, 33. The Second Amended Complaint alleges six causes of action, each of which arise out of her employment: (1) disability discrimination for an alleged failure to accommodate; (2) disability discrimination for an alleged hostile work environment; (3) disability discrimination for a failure to accommodate and/or wrongful discharge; (4) negligent supervision and/or retention; and (5) negligence. *Id.* at Counts I-VI. Carrols denies Spurlock's allegations.

**B.** **Spurlock Agreed to Arbitrate Her Employment-Related Claims**

Carrols hired Spurlock on July 2, 2018 and she commenced employment as a Restaurant General Manager. (DiGenova Aff. ¶ 16). As a condition of her employment, Spurlock executed the Arbitration Agreement. *Id.* at ¶ 18 and Ex. 1. The Arbitration Agreement covers this dispute, and expressly states that claims relating to "disputes, claims, or controversies for monetary or equitable relief arising out of or relating to your employment," including "disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to: . . . the Americans with Disabilities Act or similar state statutes; . . . personal or emotional injury to you or your family; . . . injuries you believe are attributable to Carrols under theories of product liability, strict liability,

4

intentional wrongdoing, gross negligence, negligence, or *respondeat superior*; . . . any common law, or statutory law relating to discrimination by . . . disability; . . . and alleged wrongful retaliation of any type" are subject to arbitration.

### C. Carrols' Business Impacts Interstate Commerce

Carrols is one of the largest restaurant companies in the United States. (DiGenova Aff. ¶ 3). Based in Syracuse, New York, Carrols owns, operates, and franchises more than 1,000 restaurants in 23 states – including multiple Burger King restaurants in Ohio. *Id.* at ¶¶ 3, 5. Carrols employs more than 24,000 employees from its Syracuse, New York headquarters. *Id.* at ¶¶ 3, 6. Carrols purchases products and services from vendors and suppliers in multiple states, and those products are sent across state lines to be delivered to restaurants. Customers to any particular Carrols' location hail not only from the town where the Burger King is located, but many are also travelers from other states. *Id.* at ¶ 7. Each restaurant, including the one at which Spurlock worked, is managed from Carrols' Syracuse headquarters through a defined management structure and the regular exchange of electronic data between the restaurant location and Carrols' Syracuse headquarters. *Id.* at ¶ 8.

### D. Carrols' Mandatory Arbitration Program and its Applicability to Spurlock's Claims

Effective the summer of 2006, Carrols required all employees to enter into an arbitration agreement as a condition of employment. All employees hired after that time were required to sign an arbitration agreement that details the Mandatory Arbitration Program ("MAP"). *Id.* at ¶ 9. Under the MAP, employment-related disputes that cannot be resolved internally will proceed to arbitration rather than in a lawsuit. *Id.*

The two-page Arbitration Agreement provides that both Spurlock and Carrols agree to submit to JAMS, a national arbitration association, "any and all disputes, claims or controversies

5

for monetary or equitable relief arising out of or relating to [Spurlock's] employment, even disputes, claims or controversies relating to events occurring outside the scope of [Spurlock's] employment ("Claims"). . . ." (Arb. Agmt. ¶ 2). The Arbitration Agreement further expressly provides that any claims relating or referring in any manner to "disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to: . . . the Americans with Disabilities Act or similar state statutes; . . . personal or emotional injury to you or your family; . . . injuries you believe are attributable to Carrols under theories of product liability, strict liability, intentional wrongdoing, gross negligence, negligence, or *respondeat superior*; . . . any common law, or statutory law relating to discrimination by . . . disability; . . . and alleged wrongful retaliation of any type" are subject to individual arbitration. *Id.* at ¶ 3. The Arbitration Agreement also states that "[b]y signing below, you acknowledge that you are agreeing to have Claims, as described above, finally decided in private arbitration and not in court." *Id.* at ¶ 6.

Beyond direct delivery of the Arbitration Agreement, Carrols devotes significant resources to ensuring that all employees are fully informed that agreeing to arbitration is a condition of ongoing employment. (*See* DiGenova Aff. ¶ 11 and Ex. 2, Employee Handbook provisions describing the MAP). The Handbook states that claims relating to "the Americans with Disabilities Act or similar state statutes; . . . personal or emotional injury to you or your family; . . . injuries you believe are attributable to Carrols under theories of product liability, strict liability, intentional wrongdoing, gross negligence, negligence, or *respondeat superior*; . . . any common law, or statutory law relating to discrimination by . . . disability; . . . and alleged wrongful retaliation of any type" are subject to individual arbitration. *Id.* at ¶ 3. A Carrols policy binder, which includes a copy of the MAP policy, is available to all employees at every restaurant, including the restaurant at which Spurlock worked. (DiGenova Aff. ¶ 12).

57227355;2

A poster also hangs in every Carrols Burger King restaurant which details the MAP. (*See* DiGenova Aff. ¶ 13). Human Resources' audits are regularly conducted at each restaurant, and one of the items reviewed is if this poster is hanging in the restaurant, along with certain other postings. *Id.* at ¶ 14.

### E. The MAP is Lawful, Fair and Comprehensive

Carrols' arbitration program is both fair and comprehensive. JAMS conducts the arbitration. (DiGenova Aff. ¶ 15 and Ex. 1, Arb. Agmt. ¶¶ 2, 4). JAMS is a highly-regarded national arbitration association skilled in dispute resolution, and employment disputes in particular. (*See* "JAMS Fact Sheet", DiGenova Aff., Ex. 3). JAMS' neutrals are primarily retired state and federal judges.

The Arbitration Agreement also requires that the JAMS Employment Arbitration Rules and Procedures, designed to ensure fair proceedings, apply to any arbitration. (Arb. Agmt. ¶ 2). Additionally, the Arbitration Agreement mandates that arbitrations be conducted pursuant to the JAMS Minimum Standards of Procedural Fairness. *Id.* Together, these requirements ensure, among other things, that:

- all remedies otherwise available under the applicable law in court proceedings are available in the arbitration;
- the parties are allowed reasonable discovery;
- the arbitrator is a neutral and the employee has a right to participate in the selection of the arbitrator;
- the arbitration is accessible and affordable for the employee; and
- the arbitrator ensures a fair proceeding.

(*See* JAMS Employment Arbitration Rules and Procedures and JAMS Minimum Standards of Procedural Fairness, DiGenova Aff., Exs. 4, 5). No court in the country has found JAMS'

procedural safeguards and protections to be insufficient. Despite Spurlock's execution of the Arbitration Agreement that covers this dispute, she has declined to arbitrate her claims. (*See generally* Compl.). All of Spurlock's claims are covered by the Arbitration Agreement and must be compelled to arbitration.

## ARGUMENT

**I.	The Federal Arbitration Act Requires Spurlock to Arbitrate Her Claims**

### A.	The FAA Applies to the Arbitration Agreement

The Federal Arbitration Act ("FAA") requires arbitration of claims, like Spurlock's, that are subject to a valid arbitration agreement. *Epic Sys.*, 138 S.Ct. at 1621 ("[W]e have often observed that the Arbitration Act requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.") (emphasis in original) (internal quotations omitted). To permit parties to rush to court whenever the prospect of arbitration appears uninviting would undermine the clear federal directive in support of arbitration. *Epic Sys.*, 138 S.Ct. at 1621 (The FAA "establishes a liberal federal policy favoring arbitration agreements.").

Section 2 of the FAA provides that a "[w]ritten provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable and enforceable . . ." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 266 (1995) (describing FAA's reach as expansive and "coinciding with that of the Commerce Clause" and that FAA's "basic purpose" is to "put arbitration provisions on 'the same footing' as a contract's other terms"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 is a congressional

declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."); *Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (holding FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause" and the FAA's "general applicability" reflects the "concern of Congress . . . to enforce private agreements into which parties had entered," noting that "these agreements must be rigorously enforce[d]").

Without question, Spurlock's Second Amended Complaint impacts interstate commerce. In determining whether an arbitration agreement is governed by the FAA, courts review employment contracts "broadly" to find that such contracts evidence a transaction "involving commerce" (9 U.S.C. § 2) and "focus[] on the nature of the [employer's] business, not the plaintiff's duties." *Nicholson v. Labor Ready, Inc.*, 1997 WL 294393, at *3 (N.D. Cal. 1997) (emphasis added); *Baer v. Terminix Intern. Co.*, 975 F. Supp. 1272, 1278 (D. Kan. 1997); *see also Allied-Bruce Terminix*, 513 U.S. at 277 (FAA is written broadly, extending its reach to the limits of Congress' commerce clause power); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 311 (6th Cir. 1991) (noting any claims implicating employment contracts with employers subject to regulation under the ADEA or Title VII would necessarily implicate interstate commerce).[1] Carrols' national-level business meets this standard. For this reason, the Arbitration Agreement falls within the ambit of the FAA.

### B. Federal Law Mandates Enforcement of the Arbitration Agreement

"The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to

---

[1] Copies of unpublished cases cited herein are attached as Exhibit C, in the order in which they are cited.

9

litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). *See also Seawright*, 507 F.3d at 972 (FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). When considering a motion to compel arbitration, "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714. In deciding a motion to compel under the FAA, the Court must make the following four threshold determinations:

(1) whether the parties agreed to arbitrate;

(2) whether the claims at issue fall within the scope of the arbitration clause;

(3) whether Congress intended the federal statutory claims to be non-arbitrable; and

(4) whether some or all of the claims in the action are subject to arbitration.

*Stout*, 228 F.3d at 714.

### 1. Spurlock and Carrols Mutually Agreed to Arbitrate Their Claims

The existence of an agreement to arbitrate is governed by state law. *See Dantz v. Am. Apple Grp., LLC*, 123 Fed. Appx. 702, 706 (6th Cir. 2005). Ohio law requires mutual assent (offer and acceptance) and consideration to form an enforceable contract. *Id.* at 707-708. Both exist here.

Carrols made an offer by implementing the MAP and making it a condition of employment. Spurlock manifested her assent by signing the Arbitration Agreement, which provides, "By signing below, you acknowledge that you are agreeing to have Claims, as described above, finally decided in private arbitration and not in court." (Arb. Agmt. ¶ 6). Spurlock then accepted and continued her employment with Carrols until January 2019. (DiGenova Aff., at ¶ 16). This demonstrates mutual assent and constitutes sufficient consideration to support this Motion as courts within the Sixth Circuit enforce mandatory arbitration clauses as a condition of employment. *See, e.g., Dantz*, 123 Fed. Appx. at 705, 708 (enforcing arbitration agreement signed as a condition of employment);

*Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 821-822 (S.D. Ohio 1999) (same). Indeed, under the FAA, arbitration agreements need not even be signed to be enforceable. *See, e.g.*, *Aldrich v. Univ. of Phoenix, Inc.*, 661 Fed. Appx. 384, 390 (6th Cir. 2016) (finding "an employee can be bound by an arbitration agreement, even without a signature, when he or she demonstrated acceptance of the agreement by continuing to work for the employer."); *Dawson v. Rent-A-Ctr., Inc.*, 490 Fed. Appx. 727, 730 (6th Cir. 2012) (finding employee who knowingly continued employment validly assented to new arbitration agreement); *Seawright*, 507 F.3d at 974 (finding "agreements under the FAA need only be written, not necessarily signed").

While Spurlock may argue, as she did in her response to Carrols' initial motion to compel arbitration, that it is unfair to require her to agree to arbitration as a condition of employment, United States Supreme Court precedent holds that arbitration agreements signed as a condition of employment are enforceable and courts within this district routinely enforce such agreements. *See, e.g., Epic Sys. Corp.*, 138 S.Ct. 1612 (upholding employees' arbitration agreements); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23, 26 (1991) (enforcing compulsory arbitration agreement and finding statutory claims subject to arbitration); *Dantz,* 123 Fed. Appx. at 705, 708 (enforcing arbitration agreement signed as a condition of employment); *Morrison,* 70 F.Supp.2d at 821-822 (same). *See also Jones v. Carrols LLC*, 2019-Ohio-211, 119 N.E.3d 453, ¶¶ 2, 47 (9th Dist. 2019) (same).

The Arbitration Agreement has been upheld by numerous federal district courts. *See, e.g., Foster v. Carrols Corp. et al.,* Case No. 1:17-cv-00128 (W.D.N.C. May 16, 2018); *Weese v. Carrols Corp.*, Case No. 13-14300 (E.D. Mich. Jan. 17, 2014); *Green v. Carrols Restaurant Group, Inc.*, Case No. 10-23471-CIV-JEM (S.D. Fla. June 8, 2011); *see also Trumbo v. Carrols LLC*, Case No. 20-CI-001453 (Jefferson Circuit Court, Apr. 16, 2020); *Jones v. Carrols LLC*,

11

2019-Ohio-211, 119 N.E.3d 453 (9th Dist. 2019); *Carrols Restaurant Group, Inc. and Carrols LLC v. Turner*, Case No. 17-CVS-991 (N.C. Superior Court, Iredell County, Aug. 9, 2017); *Carrols Restaurant Group, Inc. and Carrols LLC v. Wallace*, Case No. 17-CVS-331 (N.C. Superior Court, Chatham County July 27, 2017). (*See* Copies of Opinions, Ex. B).

Further proof of mutual asset and consideration exist because the Arbitration Agreement provides that both Spurlock and Carrols agreed to arbitrate their claims. (Arb. Agmt. ¶ 2). Courts within the Sixth Circuit have held that arbitration agreements requiring both parties to submit equally to arbitration constitute adequate consideration. *See, e.g., Dantz,* 123 Fed. Appx. at 708-709; *Morrison*, 70 F.Supp.2d at 824. Furthermore, after signing the Arbitration Agreement and accepting and continuing employment with Carrols, Spurlock also accepted paychecks from Carrols. This establishes Spurlock's agreement to arbitrate her claims under Ohio law.

### 2. The Arbitration Agreement Is Not Unconscionable

While Spurlock may contend, as she did in response to Carrols' initial motion, that the Arbitration Agreement is both substantively and procedurally unconscionable, neither is true. Unconscionability consists of two separate concepts, both of which must be present to invalidate an arbitration agreement. *Jones*, 2019-Ohio-211, 119 N.E.3d 453 ¶ 8.

Substantive unconscionability looks to whether the "contract terms themselves" are unfair and unreasonable. *Collins v. Click Camera & Video, Inc.*, 86 Ohio App. 3d 826, 834, 621 N.E.2d 1294 (2d Dist. 1993). "The fact that a contract provision is one-sided does not render it substantively unconscionable per se." *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 70, 2009-Ohio-2054, 908 N.E.2d 408 (2009).

An analysis of procedural unconscionability focuses on the bargaining positions of the contracting parties. *Dorsey v. Contemporary Obstetrics & Gynecology*, 113 Ohio App. 3d 75, 81, 680 N.E.2d 240 (2d Dist. 1996). However, "[m]ere inequality in bargaining power…is **not** a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer,* 500 U.S. at 33 (emphasis added). The fact that a party "could not have bargained with [the defendant] to alter the terms" of the contract "alone is insufficient to establish procedural unconscionability." *Collins*, 86 Ohio App. 3d at 835-36. The Ohio Supreme Court has also noted that the factors relied upon to find procedural unconscionability must be facts in the record. *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶¶ 25-26.

The Arbitration Agreement is neither substantively nor procedurally unconscionable. In her response to the initial motion, Spurlock argued that the Arbitration Agreement is unfair and difficult to read, though she failed to explain why or how. (Response at 11). The Arbitration Agreement is neither unfair, nor difficult to read, and has been upheld by numerous federal and state courts, including courts in Ohio. *See* Section I(B)(1), *supra*. Spurlock also argued that the fees render the Arbitration Agreement unenforceable (Response at 11), but the only fee Spurlock is required to pay is the initial filing fee and Carrols reimburses half of that fee. (Arb. Agmt. ¶ 5). For the avoidance of doubt, Carrols will stipulate that the JAMS rules do not require Spurlock to pay any further fees. Finally, Spurlock argued that being forced to give up her right to a jury trial and unspecified "other rights", render the Arbitration Agreement substantively unconscionable. (Response at 11). Here again, requiring that employees waive their right to a jury trial and arbitrate claims as a condition of employment is not unconscionable. *See* Section I(B)(1), *supra*.

Spurlock also argued that the JAMS arbitrators are ill-equipped to arbitrate her claims and the arbitration forum is ill-suited for this dispute, but that is not the case. (Response at 10). The

JAMS arbitrators are primarily retired state or federal judges, making it nonsensical to claim that the JAMS arbitrators are differently equipped than a federal judge to hear this dispute. Spurlock's argument about the arbitral forum is equally unavailing. Spurlock cannot show that an arbitration governed by the JAMS Minimum Standards of Procedural Fairness would not result in a fair adjudication of her claims.

In fact, the evidence overwhelming shows that the MAP provides a fair, neutral forum. The MAP requires JAMS, a highly-respected national organization, to provide a neutral, skilled, fair, convenient, and cost-free forum. Both Carrols and Spurlock agreed to submit all disputes to arbitration. (Arb. Agmt. ¶ 2; *see also Hodson v. Javitch*, 531 F. Supp. 2d 827, 832 (N.D. Ohio 2008) ("the clause is not one-sided; *either* party may elect to require the dispute to be resolved by binding arbitration.")). None of Spurlock's rights to bring certain claims or damages was eliminated under the MAP. (Arb. Agmt., generally). And, all disputes are to be arbitrated before JAMS, a long-standing national arbitration association skilled in dispute resolution. (*See* "About JAMS"). To ensure fairness, the Arbitration Agreement also requires application of JAMS Employment Arbitration Rules and Procedures, and that the arbitration be conducted pursuant to JAMS Minimum Standards of Procedural Fairness. (Arb. Agmt. ¶¶ 2-4). Finally, the cost provisions of the Agreement ensure that there are no prohibitive costs for Spurlock. The only fee that Spurlock may be required to pay is the initial JAMS Case Management Fee, of which Carrols reimburses half. (*Id.* ¶ 5). Carrols will stipulate that the JAMS rules do not require Spurlock to pay any further fees.

Given that there is no evidence of substantive unconscionability, the Court need not even consider whether the Arbitration Agreement is procedurally unconscionable. If, however, the Court is inclined to undertake such analysis, it must find that the Arbitration Agreement is not

procedurally unconscionable. As evidence of alleged procedural unconscionability, Spurlock argued in response to the original motion that the Arbitration Agreement was unenforceable because it is a condition of employment. As discussed above, that is not the law. *See* Section I(B)(1), *supra*. Spurlock further argued that the difference in education, negotiations skills, and bargaining power between her and Carrols renders the Arbitration Agreement procedurally unconscionable. (Response at 11). Yet courts have routinely held that "mere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement in the employment context." *Jones v. U-Haul Co. of Massachusetts and Ohio, Inc.*, 16 F.Supp.3d 922, 936 (S.D. Ohio 2014); *see also Gilmer*, 500 U.S. at 33; *Neubrander v. Dean Witter Reynolds, Inc*. 81 Ohio App.3d 308, 311, 610 N.E.2d 1089, 1091 (9th Dist. 1992). Moreover, other than Spurlock's conclusory allegations about her level of education, negotiating abilities, and the alleged disparity in bargaining power, there is no evidence that Spurlock did not understand the terms of the agreement, that she asked questions about the agreement, that Carrols failed to explain it to her, or that Spurlock was prevented from consulting with an attorney.

In sum, there is no evidence that the Arbitration Agreement is unconscionable. It has been upheld by numerous other federal courts, and the Court should enforce the Agreement here.

        **3.**        **This Dispute Falls Within the Scope of the Arbitration Agreement**

The Arbitration Agreement states that Carrols and Spurlock agree that claims relating to "disputes, claims, or controversies for monetary or equitable relief arising out of or relating to your employment," including "disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to: . . . the Americans with Disabilities Act or similar state statutes; . . . personal or emotional injury to you or your family; . . . injuries you believe are attributable to Carrols under theories of product liability, strict liability, intentional wrongdoing, gross

15

negligence, negligence, or *respondeat* superior; . . . any common law, or statutory law relating to discrimination by . . . disability; . . . and alleged wrongful retaliation of any type" are subject to arbitration. (Arb. Agmt. ¶ 3). All of Spurlock's claims are covered.

Spurlock's claims allege wrongdoing by her supervisor that occurred at work and relate to her employment. For example, she alleges a hostile work environment and claims that her supervisor humiliated her during telephone conferences and scolded her in front of her staff and restaurant customers, and that she avoided working with her supervisor in person due to his alleged behavior. (*See, e.g.,* Second Am. Compl., ¶ 27). Spurlock further claims that she complained to other managers and requested a transfer to another restaurant. *Id.* at ¶¶ 31-32. Spurlock alleges that the actions of her district manager caused her to attempt suicide by gunshot. *Id.* at ¶¶11, 12, 33.

In the new causes of action she asserts in the Second Amended Complaint, Spurlock alleges that Carrols failed to accommodate her disability in violation of Ohio Revised Code § 4112.02 (*Id*. at ¶¶ 39-43), created a hostile work environment because of her disability in violation of Ohio Revised Code § 4112.02 (*Id*. at ¶¶ 44-53), and failed to reinstate her to her position after her hospitalization or otherwise wrongfully discharged her in violation of Ohio Revised Code § 4112.02. *Id*. at ¶¶ 54-61. She alleges that Carrols was negligent in supervising or retaining her supervisor (*Id*. at ¶¶ 62-68, 77-82) and that Carrols' actions amounted to negligent or intentional infliction of emotional distress. *Id*. at ¶¶ 69-76. Among other relief, she requests back pay and front pay. *Id.* at Prayer for Relief. Without doubt, all of Spurlock's claims are related to her employment and fall squarely within the scope of the Arbitration Agreement.

    **4.**    **Spurlock's Statutory Claims Are Arbitrable**

Spurlock's statutory claims under Ohio Revised Code 4112.02 are arbitrable. Courts within the Sixth Circuit routinely grant motions to compel arbitration of all types of employment disputes,

including statutory claims and claims of alleged disability discrimination made pursuant to Ohio Revised Code § 4112.02. *See e.g., Tillman,* 735 F.3d 453 (enforcing unsigned arbitration clause and compelling arbitration of employee's Title VII claim); *Cosgrove*, 105 F.3d at *1-2 (compelling arbitration of sexual harassment claim and state law claim for retaliation and intentional infliction of emotional distress); *Kelch v. Pyramind Hotel Grp.,* 18-cv-707, 2020 WL 489237 at *1, 3-4 (S.D. Ohio Jan. 30, 2020) (Black, J.) (compelling arbitration of age and disability discrimination claims under Ohio Revised Code § 4112.02, as well as claims alleging retaliation under Ohio Revised Code § 4123.90, age discrimination under the ADEA, and disability and retaliation under the ADA); *see also Morrison,* 70 F. Supp.2d at 820 (finding "the Sixth Circuit recognizes that both statutory and common law claims may be subject to an arbitration agreement enforceable under the FAA."). Accordingly, Spurlock's claims in this matter are subject to arbitration.

### 5. All of Spurlock's Claims are Subject to Arbitration and this Action Should Be Dismissed

Under the last part of the *Stout* test, once it has been determined that arbitration is compelled on all claims pursuant to the terms of the employment agreement, dismissal is appropriate. *See Morrison,* 70 F. Supp.2d at 829 (finding "a court may dismiss a lawsuit when it determines that all of the issues involved are subject to arbitration."). All of Spurlock's claims in this case are subject to arbitration because they all relate to her employment with Carrols. In light of this analysis, Carrols' Motion must be granted and Spurlock's Second Amended Complaint should be dismissed.

### CONCLUSION

Spurlock signed a binding Arbitration Agreement that covers the exact claims she now asserts. That her claims fall within the scope of the Arbitration Agreement is even more clear in light of her new allegations and claims in the Second Amended Complaint. Given the

17

overwhelming authority mandating enforcement of similar arbitration agreements, this Court should enforce the Arbitration Agreement here.

WHEREFORE, for the above-stated reasons, Carrols requests that this Court grant this Motion, compel this entire matter to proceed through binding arbitration, dismiss Spurlock's Second Amended Complaint, and award such other and further relief as this Court deems just and appropriate, consistent with governing law on the referral of employee disputes to arbitration.

Dated: April 5, 2021

Respectfully submitted,

CARROLS LLC

*s/ Jeffrey J. Mayer*

Jeffrey J. Mayer (Bar No. 69327)
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
Telephone: 312.634.5700
Facsimile: 312.424.1900
Email: jeffrey.mayer@akerman.com

Stephen D. Jones  (0018066) (Trial Attorney)
Jeremy S. Young  (0082179)
Roetzel & Andress, LPA
41 S. High Street, 21st floor
Columbus, OH 43215
Telephone: 614.463.9770
Facsimile: 614.463.9792
E-mail:  sjones@ralaw.com
           jyoung@ralaw.com

*Counsel for Defendant, Carrols LLC*

18

## CERTIFICATE OF SERVICE

    I, Jeffrey J. Mayer, being one of the attorneys of record in the above cause, state that I caused to be served a true and correct copy of the foregoing Combined Renewed Motion and Memorandum in Support of Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Action Pending Arbitration by email and U.S. mail on this 5th day of April, 2021 upon the following party:

        Justin C. Haskamp
        Haskamp Law, LLC
        8214 Pineleigh Court
        Mason, Ohio 45050
        haskamplaw@hotmil.com

        *Counsel for Plaintiff, Angela Spurlock*

            */s/ Jeffrey J. Mayer*