# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| ANGELA SPURLOCK, | : | Case No. 1:20-cv-1038 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| CARROLS LLC, D/B/A BURGER KING CORPORATION, | : | |
| Defendant. | : | |

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING ACTION PENDING ARBITRATION (Doc. 12)**

This civil case is before the Court on Defendant Carrols LLC, d/b/a Burger King Corporation ("Burger King")'s motion to compel arbitration and dismiss, or alternatively stay, the action pending arbitration (Doc. 12), and the parties' responsive memoranda (Docs. 13, 14).

## I. BACKGROUND

The following factual background is as alleged by Plaintiff Angela Spurlock in her Second Amended Complaint. (Doc. 10). Spurlock is a former general manager of a Burger King restaurant located in Cincinnati, Ohio. (*Id*. at ¶ 9). Spurlock suffers from clinical anxiety and depression, among other mental health issues. (*Id*. at ¶ 10). She also is diagnosed with morbid obesity and cyclical vomiting syndrome ("CVS"). (*Id*. at ¶ 22).

From August through December of 2018, Burger King employees engaged in berating and humiliating behavior towards Spurlock, knowing of Spurlock's mental health and disabilities. (*Id*. at ¶¶ 10–12, 26). For example, her district manager, Frank

Noack, publicly and repeatedly, often daily, scolded her, using profane language, in front of other staff and customers for no other reason than to humiliate her. (*Id*. at ¶¶ 27–30).

Spurlock complained to another district manager and another member of Burger King's management personnel via email about the behavior. (*Id*. at ¶ 31). Spurlock notified management that she was struggling with CVS episodes and anxiety attacks due to Noack's behavior, and also that she was feeling suicidal. (*Id*. at ¶ 30). Spurlock requested a transfer to another location away from Noack, but no changes were made. (*Id*. at ¶ 32). Around December 1, 2018, Spurlock attempted suicide by gun shot to her abdomen, resulting in severe injuries. (*Id*. at ¶¶ 12–13). Spurlock was hospitalized for an extended period and has not worked for (or been offered a return to employment with) Burger King since her hospitalization. (*Id*. at ¶ 36).

Based on the foregoing, Spurlock filed suit against Burger King, alleging six claims: (1) disability discrimination and failure to accommodate under Ohio law; (2) hostile work environment under Ohio law; (3) failure to accommodate and/or wrongful discharge under Ohio law; (4) negligent supervision and/or retention; (5) negligent and/or intentional infliction of emotional distress; and (6) negligence. (*See generally, id*.)

Spurlock originally brought her complaint in the Hamilton County, Ohio Court of Common Pleas. (Doc. 2). Burger King removed the action to this Court citing this Court's diversity jurisdiction. (Doc. 1).[1] Burger King then moved to compel arbitration and to dismiss, or alternatively stay, the action pending arbitration. (Doc. 12). To its

---

[1] The Notice of Removal states that Burger King is a Delaware corporation with a principal place of business in New York, Spurlock is an Ohio citizen, and the jurisdictional minimum in damages is being sought. (Doc. 1). Spurlock has not moved to remand back to state court.

2

motion to compel arbitration, Burger King attaches the "Agreement for Resolution of Disputes Pursuant to Binding Arbitration Between Carrols Corporation and Spurlock, Angela" (the "Agreement"), signed by Spurlock on June 28, 2018. (Doc. 12-1 at Ex. 1, PageId 230–31).

The Agreement is a mandatory arbitration program as a condition of employment with Burger King, and provides:

> Under this arbitration program, which is mandatory, Carrols and you agree that any and all disputes, claims or controversies for monetary or equitable relief arising out of or relating to your employment, even disputes, claims, or controversies relating to events occurring outside the scope of your employment ("Claims"), shall be arbitrated before JAMS, a national arbitration association, and conducted under the then current JAMS rules on employment arbitration.
>
> * * *
>
> Claims subject to arbitration shall include, without limitation, disputes, claims or controversies relating or referring in any manner, directly or indirectly, to:…personal or emotional injury to you or your family;…the Americans with Disabilities Act or similar state statutes; [and] injuries you believe are attributable to Carrols under theories of product liability, strict liability, intentional wrongdoing, gross negligence, negligence, or *respondeat superior*;…. My agreement to arbitrate Claims extends to Claims against Carrols' officers, directors, managers, employees, owners, attorneys and agents, as well as to any dispute you have with any entity owned, controlled or operated by Carrols Corporation.

(*Id.*) The Agreement also includes an "Employee Acknowledgement," which provides:

> By signing the below, you acknowledge that you are agreeing to have Claims, as described above, finally decided in private arbitration and not in court. You acknowledge that you have read and understand this arbitration agreement; that you have

> had an opportunity to ask questions regarding the agreement; and that if you had any question they have been satisfactorily answered… You also agree that you have been told that JAMS' rules for arbitration; JAMS' minimum standards for fairness in an employment arbitration; as well as information about JAMS generally available at www.jamsadr.com or upon request from a manager at the location where you work.

(*Id.*)

## II. STANDARD OF REVIEW

### A. Motion to Compel Arbitration

"Under the Federal Arbitration Act, 9 U.S.C. § 2, a written agreement to arbitrate disputes which arise[ ] out of a contract involving transactions in interstate commerce…'shall be valid, irrevocable and enforceable'" save any reason in law or equity to the contrary. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (stating that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural polices to the contrary"). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Id.*

The FAA generally applies to employment contracts with arbitration provisions. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)). When considering a motion to compel arbitration, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (6th Cir. 2000) (internal citations omitted). However, on the second task, the Court also may need to resolve who, the court or an arbitrator, is responsible for determining whether the scope of the agreement "covers a particular controversy," or, in other words, which of those two is responsible for determining "arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 589 U.S. --, 139 S. Ct. 524, 527, 529 (2019).[2]

### B. Motion to Dismiss

The proper vehicle when requesting dismissal of a case in favor of arbitration is pursuant to Fed. R. Civ. P. 12(b)(6). "A party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party has failed to state a claim upon which relief can be granted." *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp. 3d 1257, 1262 (S.D. Ohio 2020) (quoting *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018)).

In reviewing a Rule 12(b)(6) motion, a court ordinarily would examine the complaint to determine whether it contained "enough facts to state a claim for relief that

---

[2] Here, Spurlock does not dispute that the parties have an arbitration agreement, nor does she bring any federal statutory claims. Thus, it is only necessary for the Court to consider the first and fourth tasks.

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *DiGeronimo Aggregates*, LLC v. Zemla, 763 F.3d 506, 509 (6th Cir. 2014). Here, however, the sufficiency of the allegations in the complaint is not in dispute, rather whether the allegations in the complaint must be sent to arbitration. *See Pinnacle Design*, 490 F. Supp. 3d at 1262 (applying 12(b)(6) standard to motion to compel arbitration).

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted). Thus, the Sixth Circuit has taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted).

Here, the Agreement was not attached to Spurlock's complaint. However, there is no material disputed issue of fact that the Agreement (attached to Burger King's motion to dismiss) and the JAMS rules (as incorporated into the Agreement) are relevant to the

6

issue presented to the Court for review. And, although Spurlock argues that the Agreement does not apply in this case, she does not dispute that she signed the Agreement as part of her employment with Burger King. Thus, it is appropriate for the Court to consider the Agreement attached to the motion to compel arbitration and dismiss, or alternatively stay, the action.[3]

### III. ANALYSIS

#### A. The Action Must be Sent to Arbitration.

Spurlock does not dispute that she signed the Agreement. However, Spurlock argues that she cannot be compelled to arbitrate under that Agreement for two reasons: (1) her claims are outside the scope of the Agreement; and (2) the Agreement is unconscionable. (Doc. 13). The Court considers each challenge in turn.

##### 1. Scope of the Agreement

Spurlock contends that her claims fall outside the scope of the Agreement, citing various cases from around the country in which courts found intentional torts outside the scope of an arbitration agreement. (Doc. 13 at 5–7). Spurlock also suggests that the Court must refuse to enforce the Agreement as a matter of public policy because the behavior and injury is so egregious that it should not be sent to arbitration. (*Id*. at 3). However, in this instance, the Court does not decide the scope of the Agreement because that question of arbitrability was delegated to the arbitrator.

---

[3] It is unnecessary for the Court to consider, and the Court does not consider, any of the other exhibits provided by Burger King.

"[W]hether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" is a gateway question of arbitrability. *Henry Schein*, 139 S. Ct. at 529 (2019) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010)). "Usually these questions are 'for a court to decide.'" *Ciccio v. SmileDirectClub, LLC*, No. 20-5833, -- F.4th --, 2021 WL 2621115, at *3 (6th Cir. June 25, 2021) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002). "But parties may decide to send these gateway questions to an arbitrator rather than a court… [by incorporating] a delegation provision." *Id*. (citations omitted). *See also Rent-A-Center*, 561 U.S. at 69 ("[t]he delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement").

"The Supreme Court requires 'clear and unmistakable' evidence that the parties intended to delegate gateway questions to the arbitrator." *Id*. (citation omitted). "Under [Sixth Circuit] precedent, there is such evidence here because the parties incorporated the [JAMS] rules into their Agreement." *Id*. (citing *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020)).[4]

In this case, the Agreement clearly and unmistakably incorporates the JAMS rules. (Doc. 12-1 at Ex. 1, PageId 231–32). The JAMS rules, as incorporated into the Agreement, provide:

---

[4] In *Ciccio*, the parties incorporated the American Arbitration Association rules into their agreement. *Id*. Those rules provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id*. Although the AAA and JAMS rules are not identical, both similarly provide "clear and unmistakable" evidence that the parties intended to delegate gateway questions to the arbitrator.

> Jurisdictional and arbitrability disputes, including disputes over the <u>formation</u>, existence, validity, <u>interpretation or scope of the agreement</u> under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(*Id*. at Ex. 4, PageId 245 (emphasis added)). Accordingly, the "incorporation of these rules provides clear and unmistakable evidence that the parties agreed to arbitrate gateway arbitrability questions." *Ciccio*, 2021 WL 2621115 at *4.

Thus, whether Spurlock's claims fall within the scope of the Agreement is a preliminary question for the arbitrator, not this Court, to decide.

### 2. Unconscionability

Spurlock also argues that the Agreement is unconscionable for various reasons, including: (1) the parties' unequal bargaining power; (2) the Agreement being difficult to read, both in substance and format; (3) the breadth of the Agreement; (4) the filing fee required to arbitrate; (5) needing to sign the Agreement to maintain employment; and (5) the arbitrator being ill-equipped to handle the nature of her claims. (Doc. 13 at 10–15). Burger King contends that the Agreement is not unconscionable and the same agreement has been previously upheld by other courts as a valid arbitration agreement and condition of employment. (Doc. 14 at 3–9).

In this case, whether the Agreement is unconscionable is another gateway question concerning the Agreement's formation, which question the parties agreed to send to the arbitrator. As recently summarized by the Sixth Circuit in an unpublished decision:

9

> Other gateway questions concern an agreement's "enforceability." Suppose that the employee argues instead that a court should resolve the merits of the employment claims because the contract that contains the arbitration clause is invalid under a general contract-law theory like unconscionability or duress. Who should decide whether the employment contract or arbitration clause is enforceable? The Supreme Court's answer to this question distinguishes between a general challenge to the contract as a whole and a specific challenge to the arbitration clause. *See Preston v. Ferrer*, 552 U.S. 346 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–45 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). A general challenge to the entire contract (for example, a claim that the contract was fraudulently induced) must be sent to the arbitrator even when it might invalidate the arbitration clause too. *See Prima Paint*, 388 U.S. at 403–04 (relying on 9 U.S.C. § 4). Conversely, a specific challenge to the arbitration clause (for example, the claim that it was fraudulently added at the last minute) must be decided by a court before the court compels arbitration. *See Buckeye*, 546 U.S. at 444–46.

*Anderson v. Charter Commc'ns, Inc.*, No. 20-5894, -- Fed. App'x. --, 2021 WL 2396231, at *2 (6th Cir. June 11, 2021). *See also Rent-A-Center*, 561 U.S. at 71–72.

Here, Spurlock does not specifically challenge the delegation provision. Instead, she argues that the Agreement as a whole, and her being compelled to arbitrate instead of litigating in court, is unconscionable and cannot be enforceable. As with the scope of the Agreement, the Court must send this gateway question of contract formation to the arbitrator pursuant to the Agreement. (Doc. 12-1 at Ex. 4, PageId 245).[5]

---

[5] When reaching this conclusion, the Court is not opining as to whether facts of Spurlock's case, the allegedly egregious behavior of Burger King employees causing her to attempt suicide by gunshot, and her claims are arbitrable. Nor is the Court opining as to whether the Agreement is unconscionable for the various reasons cited by Spurlock. As discussed, the arbitrator must decide these preliminary matters pursuant to the Agreement.

### B. The Case is Stayed.

Burger King requests that this Court dismiss this action, or alternatively to stay this action, pending arbitration. (Doc. 12, 14). Spurlock only opposes Burger King's request to compel arbitration and does not discuss whether the action should be dismissed or stayed if she were compelled to arbitrate. (Doc. 13).

To reiterate, the FAA establishes procedures for parties to enforce arbitration agreements in federal court. 9 U.S.C. §§ 3–4. Section 3 provides that, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "<u>shall</u> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" *Id*. (emphasis added); *see, e.g., Anderson*, 2021 WL 2396231 at *4.

When construing this section, some circuits adhere to this mandatory language that a court cannot dismiss and must stay the action pending arbitration. *Anderson*, 2021 WL 2396231 at * 4 (citing cases from the Second, Third, Tenth, and Eleventh Circuits). However, despite the FAA's mandatory language, several circuits have created an exception that allow a district court to dismiss the action (instead of staying the action) if it is clear the entire controversy will be resolved by arbitration. *Id*. at * 5 (citing cases from the First, Fifth, Eighth, and Ninth Circuits). Although the Sixth Circuit has "followed the latter approach in unpublished decisions," the Sixth Circuit has not yet issued binding precedent on whether the district court may dismiss a case, or must only stay the case, once compelling arbitration. *Id*.

This case presents many of the same issues as *Anderson*, which decision this Court finds illustrative. In *Anderson*, "the parties left several 'gateway' issues for the arbitrator," such as unconscionability and the scope of the arbitration agreement. *Id*. Thus, the Sixth Circuit concluded that "the arbitration may not resolve all claims," and the case should have been stayed instead of dismissed. *Id*. As already discussed, this case includes such "gateway" issues that the parties agreed the arbitrator would decide. A stay is appropriate.

### IV. CONCLUSION

Based upon the foregoing:

1. Defendant's motion to compel arbitration (Doc. 14) is **GRANTED**;

2. The Court **COMPELS** the matter to arbitration; and

3. This action is **STAYED** pending arbitration. The parties **SHALL** notify the Court within 14 days upon the conclusion of arbitration.

**IT IS SO ORDERED.**

Date:   7/7/2021                                                  *s/Timothy S. Black*
                                                                              Timothy S. Black
                                                                              United States District Judge